UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN DOE,**<br><br>Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF THE ARMY,**<br><br>Defendant. | Case No. 1:14-cv-01583 (CRC) |
| **SHANNON TALLANT et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**U.S. DEPARTMENT OF THE ARMY, et al.,**<br><br>Defendants. | Case No. 1:14-cv-01801 (CRC) |

**MEMORANDUM OPINION AND ORDER**

These cases present an unusual line-up of plaintiffs who want to litigate their cases as far from their home as possible, and a federal government agency that wants to move them as far from Washington, D.C. as possible. They arose after the Alaska National Guard investigated several of its soldiers for misconduct. The subjects of those investigations filed two related lawsuits against the Department of the Army under the federal Privacy Act, alleging that the Guard leaked confidential information from the investigations to state officials, and ultimately the local media, without their consent. The Army now moves to transfer the cases to the District Court for the District of Alaska. Because, among other reasons, Alaska has a much closer nexus to the suits and trying the cases in Washington, D.C. would be extremely inconvenient for the many witnesses that are likely to be involved, the Court will grant the Army's motions.

**I.     Background**

Unless otherwise noted, the following facts are drawn from the allegations in both complaints. Plaintiff John Doe[1] served as a recruiter for the Alaska National Guard. Doe Compl. ¶¶ 3, 11–15. In early 2013, Doe was interviewed as part of an investigation into misconduct by other members of his battalion. Id. ¶ 16. Doe alleges he was pressured by the interviewer to falsely implicate a fellow soldier in wrongdoing, but he refused to do so. Id. In retaliation for having refused the request, Doe alleges he was investigated for abusing his authority and engaging in inappropriate relationships with junior soldiers. Id. ¶ 20. As part of that investigation, Doe maintains the Alaska National Guard requested and obtained an Anchorage Police Department report concerning a rape complaint against Doe, which he says is unfounded. Id. Doe alleges the police report was placed in his official personnel record and resulted in his demotion. Id. ¶¶ 26–29. He also claims that the Guard released details of the report to Alaska state officials and other unauthorized third parties, who in turn disclosed them to the media without his consent. Id. ¶¶ 36–38.

Plaintiffs Shannon Tallant, John Nieves, Jarrett Carson, and Joseph Lawendowski were also members of the Alaska National Guard. They allege that a confidential investigative report into allegations of misconduct on their part was leaked to local Alaska media a month after Doe filed his suit. Tallant Compl. ¶¶ 15–16, 18. Plaintiffs assert that the report contained false statements, as well as personal information about them that could aid in identity theft. Id. ¶¶ 23–24.

Plaintiffs bring eight almost identical claims in both complaints against the Department of the Army under the Privacy Act, 5 U.S.C. § 552a, requesting a declaratory judgment, an

---

[1] The Chief Judge of the Court granted Doe leave to proceed under a pseudonym.

injunction, and damages. The Army has moved under 28 U.S.C. § 1404(a) to transfer both cases to the District of Alaska. All five Plaintiffs are represented by the same counsel, who practice in Washington, D.C. Apart from these motions and the order allowing John Doe to proceed under a pseudonym, no substantive developments have yet taken place in either case.

## II. Standard of Review

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The trial court has broad discretion to transfer or retain a case "according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quotations removed). In deciding motions to transfer, courts consider both the private interest of the parties involved as well as the public interest. Id. at 30. Courts in this District have boiled down these considerations into a number of factors. The private interest factors include: "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003) (citing Trout Unlimited v. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996)). The public interest factors include: "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in deciding local controversies at home." Id. The moving party bears the burden of establishing that transfer satisfies these criteria. S. Utah Wilderness Alliance v. Lewis, 845 F. Supp. 2d 231, 234 (D.D.C. 2012).

**III.     Analysis**

Privacy Act cases may be brought where the plaintiff "resides, or has his principal place of business, or [where] the agency records are situated, or in the District of Columbia." 5 U.S.C. § 552a(g)(5). Thus, both this District and the District of Alaska are proper venues for these cases. The question, then, is which of the two is the more appropriate venue. 28 U.S.C. § 1404(a). To answer that question, the Court must weigh both the private and public interest factors noted above.

   A.     <u>Private Interest Factors</u>

Taken together, the six private interest factors point decidedly in favor of transfer. The first factor is the plaintiff's choice of forum. While courts generally defer to the plaintiff's choice, that deference "is lessened when the plaintiff is not a resident of their chosen venue." <u>Hooker v. Nat'l Aeronautics & Space Admin.</u>, 961 F. Supp. 2d 295, 298 (D.D.C. 2013); <u>accord</u> <u>M & N Plastics, Inc. v. Sebelius</u>, 997 F. Supp. 2d 19, 23 (D.D.C. 2013) ("[D]eference to the plaintiff's choice of forum . . . gives way when that choice is not their home forum.") (citations omitted); <u>Kazenercom TOO v. Turan Petroleum, Inc.</u>, 590 F. Supp. 2d 153, 163 (D.D.C. 2008) ("[P]laintiffs' choice of forum receives minimal deference because not one of the plaintiffs resides in the District of Columbia.") (citing <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255–56 (1981)). None of the Plaintiffs here live or work near the District of Columbia. So while this factor still favors Plaintiffs, it does not weigh heavily in the analysis.

The second and third factors—defendant's choice of forum and where the claim arose—obviously point towards Alaska. The fourth factor, convenience of the parties, also appears to point to the Last Frontier as all five of the Plaintiffs presumably still reside in Alaska. While Plaintiffs argue that Washington, D.C. would be more convenient for *their attorneys*, the location

4

of Plaintiffs' chosen counsel is of "little significance" in the venue transfer analysis. Kazenercom TOO, 590 F. Supp. 2d at 163; accord Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 52 n.7 (D.D.C. 2000) ("The location of counsel carries little, if any, weight.") (quotations removed).

The fifth factor—convenience of the witnesses—most strongly favors transfer. The two complaints identify perhaps dozens of potential witnesses, including the Alaska National Guard officials who conducted the misconduct investigations at issue; other members of the Guard; the local law enforcement personnel who handled and may have disclosed the rape complaint against John Doe; and the Alaska state officials and members of the media who allegedly received details of the police report and investigation findings. The vast majority of these witnesses can be presumed to live and work in Alaska. The substantial inconvenience to all of these witnesses of participating in a trial over 3,000 miles and four time zones away is self-evident.

The final private interest factor—access to sources of proof—also appears to support transfer. Although there is some disagreement as to whether Plaintiffs' National Guard records are located with their unit in Alaska or at a central repository in Kentucky, at least some records are likely to be found in Alaska and none appear to be in the District of Columbia.

Finally, John Doe asks the Court to consider another factor that is not captured by the six noted above: He argues that transfer to Alaska would increase the risk that his identity will be revealed. While the Court has considered Doe's argument as part of its transfer analysis, Doe has not substantiated his concern with any evidence that the District Court in Alaska would be unable to keep his identity secret should it allow him to maintain his anonymity. As a result, the Court does not agree that this consideration supports venue in this District. In sum, the private interest factors weigh in favor of transfer.

B.    Public Interest Factors

The public interest factors also weigh in favor of transferring these cases to the District of Alaska. The first factor is whether the District of Alaska is as capable of adjudicating a Privacy Act claim as this Court. Plaintiffs contend that this District has greater familiarity with Privacy Act matters by virtue of being a special venue for those cases under Section 552a(g)(5). But while courts in this District regularly handle Privacy Act cases, all federal courts are "presumptively competent" to interpret federal law. In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1175 (D.C. Cir. 1987) aff'd sub nom. Chan v. Korean Air Lines, Ltd., 490 U.S. 122 (1989) (quotations removed). In any event, whatever preference Congress has expressed for litigating Privacy Act cases in this District is outweighed here by the other considerations favoring transfer.

The second factor—relative congestion of the courts' dockets—is neutral, as both districts have roughly equal numbers of pending cases per active judge, without considering the relative complexity of cases in each District. See Judicial Caseload Profile (Dec. 2014), http://www.uscourts.gov/Statistics/ FederalCourtManagementStatistics.aspx (noting 195 pending cases per judge in the District of Alaska, and 178 pending cases per judge in the District of Columbia). The final and perhaps most important public interest factor—local interest—points towards transfer. Pres. Soc. of Charleston v. Army Corps of Eng'rs, 893 F. Supp. 2d 49, 54 (D.D.C. 2012) ("[T]he interest in having local controversies decided at home . . . tips heavily in favor of transfer."); Hooker, 961 F. Supp. 2d at 298 (transferring a Privacy Act suit against NASA because "Maryland has a strong interest in deciding controversies between Maryland citizens and Maryland employers"). While Plaintiffs assert that this dispute has national significance, it really does not. The cases concern federal employees asserting rights afforded

under federal law, but all the decisions and underlying events occurred in Alaska, and nothing suggests that any errors of the Alaska National Guard implicate, or could encourage further violations in, National Guard units elsewhere. The District of Columbia simply has no meaningful ties to this case.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Transfer [ECF No. 8, Case No. 14-cv-01583] is GRANTED.

It is further **ORDERED** that Defendants' Motion to Transfer [ECF No. 9, Case No. 14-cv-01801] is GRANTED.

It is further **ORDERED** that the Clerk shall transfer Case No. 14-cv-01583 and Case No. 14-cv-01801 to the U.S. District Court for the District of Alaska.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date: April 21, 2015